## SAMUEL R. MILLER *versus* THOMAS LORD.

11

By articles of copartnership between M. and L., the profits were to be divided in certain proportions, and it was agreed that M. might draw from the stock $2500, and L. $300, annually, but nothing was said about interest on the sums so to be withdrawn. After the dissolution of the copartnership and a division of the goods on hand, it was agreed, in order to make a final settlement, that M. should estimate the profits of the business, and that L. should elect either to buy M.'s interest in the concern or sell his own interest to M., according to such estimate ; that the partner buying out should receive all the advantages to accrue from the notes and accounts held by the firm, and should pay all debts due from the firm ; and that the sum due from the partner selling out, on his private account with the firm, should be deducted from the proportion of the profits to be paid to him ; and a memorandum made of matters in dispute, was to be submitted to arbitration, if the parties should not agree in regard to them. It was *held*, that this agreement was not void for uncertainty in not determining whether the estimated profits were to include interest on the sums withdrawn as above stated, nor for uncertainty in regard to the items contained in the memorandum, these items being expressly excluded from the operation of the agreement.

A controversy between a copartnership and one of the partners, in regard to such partner's private account with the firm, is within the equity jurisdiction conferred on this Court by *St.* 1823, *c.* 140, "in disputes between co-partners, in cases where there is no adequate remedy at law."[1]

In all cases where an account is to be stated between partners, this Court has equity jurisdiction under that statute.

The agreement above stated was held not to oust this Court of its equity jurisdiction in a dispute between the partners, for what items were to be included in M.'s private account, and what in the profits, was to be determined, and for these purposes an account must be stated.

In general, where articles of copartnership permit the partners to withdraw certain sums annually, without containing any stipulation in regard to interest thereon, interest will not be allowed.

If the parties to an agreement understand it differently at the time of entering into it, but neither party makes known his construction to the other until after the agreement is concluded, they will, in a court of equity, be bound by the terms of the agreement, and these terms will be construed by the court.

In a bill in equity between partners, a prayer that the defendant may be held to render an account of all moneys and effects of the firm received by him, and of

---

[1] See Revised Stat. *c.* 81, § 8

all other matters relating to the concern, is equivalent to a prayer for general relief.

BILL in equity. The bill alleges, among other things, that about the 11th of December, 1820, the plaintiff and defendant entered into copartnership, by an indenture ; — that in the indenture it was stipulated, that the plaintiff should advance the sum of $20,000, without interest, for the joint benefit of the partners, with which the plaintiff was to be credited in the books of the copartnership ; that the profits of the business should be divided in the proportion of seventeen twenty-fourths to the plaintiff and seven twenty-fourths to the defendant ; that the plaintiff should have a right to draw from the stock of the copartnership the sum of $2500, and the defendant, the sum of $300, annually, and no more, to be charged to the parties respectively ; and that the business should be carried on by the defendant, and that he should keep a complete set of books in the most regular manner. It is then alleged, that about the 24th of November, 1823, the copartnership was dissolved by an indenture, in which it was stipulated, that certain merchandise then on hand should be divided between the parties in the proportion above mentioned, to be charged to them respectively ; that the defendant should settle and close the business of the copartnership ; and that for this purpose all the effects remaining after the division above mentioned, and all the books and papers, except certain notes and acceptances to be collected by the plaintiff, should be delivered to the defendant, subject to the inspection of the plaintiff ; and that the defendant should adjust and settle the business according to the terms of the articles of copartnership, except as to the time of the computation of interest on the capital of $20,000 advanced by the plaintiff ; that the defendant should render an account to the plaintiff at the end of every term of three months, and should make payments to the plaintiff at the end of every thirty days, until the plaintiff should be reimbursed the amount of capital furnished by him and of all advances made by him, for the firm, with interest as therein provided. The bill further alleges, that pursuant to the last indenture a large amount of property, notes, books, &c., were put into the hands of the defendant, and that he thereupon collected large sums of mon-

ey, but that he has not kept full and accurate accounts and rendered the same to the plaintiff upon request ; on the contrary, that the accounts rendered to the plaintiff from time to time were inaccurate and incomplete ; that the defendant pretends that the plaintiff is chargeable with interest for all sums by him withdrawn during the copartnership, though less than $2500 per annum, whereas no interest ought to be charged on such sums, and no interest had in fact been charged thereon until the plaintiff urged the defendant to make a final settlement ; that the defendant, at various times, rendered accounts of profits to the plaintiff, in which items of interest due to the firm, were embraced, but no charge of interest was therein made against the plaintiff ; that the defendant alleges that he is not liable to account, because the plaintiff, after the dissolution of the copartnership, agreed to surrender all his right in the joint property to the defendant, in consideration of a sum of money to be paid by the defendant by instalments, and that he, the defendant, tendered his notes for the payment of such instalments ; but the bill charges that no such binding agreement was made, though a proposition passed between the parties ; that, although the proposition never became a binding agreement, and the plaintiff never released his right to an account, and to the profits of the concern, yet at the time of making such proposition, for the sake of a prompt settlement, he would have complied with the terms thereof, according to his understanding thereof, and according to what he believes was the defendant's understanding thereof at the time, if the defendant would have fairly so complied ; that the real facts concerning such proposition and agreement were, that the plaintiff, wishing to close the concern, the defendant requested him to estimate the profits and allow the defendant to elect to take the whole copartnership effects and pay the plaintiff his proportion of the profits thus estimated, or to surrender the copartnership effects to the plaintiff and receive his, the defendant's, proportion of the profits thus estimated ; that thereupon the defendant, having the exclusive control of the books and exclusive knowledge of the state of the debts and effects, rendered the plaintiff an account, purporting to be a statement of the affairs of the concern and of the gains and profits, in

which account no mention appeared of interest upon the sums drawn out by the plaintiff as above mentioned ; that the plaintiff, not knowing that this account was not true and just, and not suspecting that any claim would be set up to charge him with interest on such sums, made an estimate of the profits at $25,500, and that the defendant, under pretence of complying with the plaintiff's proposition, elected to take the whole effects and pay the plaintiff his proportion of the profits thus estimated, and thereupon, for the first time, made out an account against the plaintiff, charging him with interest on the sums so drawn out, to the amount of about $2000, which the defendant claimed as a debt due to the partnership and to be received by him under the agreement, and, after making this debit, struck a balance, and pretended to tender the plaintiff notes for the balance, namely, $1485·88. The plaintiff then alleges that no interest was chargeable on sums so drawn out, and that, if there had been, it would have been a part of the profits, in which he would have been entitled to share ; that by rendering accounts of the profits in which no such charge was included, the defendant waived any claim thereto ; that if such interest was properly chargeable, the plaintiff was misled and deceived by the defendant, in his not noting the same as an item of profits in the account which he rendered the plaintiff for the purpose of enabling him to make an estimate of the profits, and therefore that no proceeding founded on such estimate is binding upon the plaintiff, even if it would otherwise have so been. The bill concludes with a prayer, that the defendant may be required to render an account of all moneys paid and received by him, on account of the joint concern, since the dissolution, of all debts due and owing by and to the firm, of all property, effects, and assets, &c., and of all other matters in any wise relating to the concern, and to surrender the books and papers to some suitable person, so that the plaintiff may have access to the same, and to abide such order and decree as to the Court shall seem just and equitable.

The defendant's answer states, among other things, that the parties entered into the copartnership, and that the profits were to be divided in the proportions set forth in the bill ; that each party was to draw out his private and family expenses ;

that the plaintiff said he should want $2500 *per annum*, and the defendant, thinking interest was to be charged, named $300 as the sum which *he* should want ; that the defendant opened and kept complete and correct books, to which the plaintiff had access ; that during the whole copartnership, the book of original entries, he believes, was accurately kept ; that apprentices were, with the plaintiff's approbation, permitted to make entries in and to post the books, in consequence of which, within six or eight months after the commencement of the copartnership, the books were inaccurately kept and would not balance, and never afterward balanced, of which the plaintiff was well informed at the time ; that the errors amounted to from $1000 to $3000, but the items were unknown to the defendant ; that the defendant believes the plaintiff was at all times as well informed of the affairs of the copartnership, and of the books and entries therein, as the defendant was ; that the plaintiff did not require the defendant to make the books balance by correcting mistakes, but waived such correction thereof ; that the defendant has accordingly rendered accounts as accurately as the books would allow, without such correction ; that about a month before the purchase hereafter mentioned, the plaintiff examined the books minutely, with the view of buying or selling ; that the defendant never concealed from him, with a view to influence him in making an estimate and proposition, any thing touching interest to be charged on moneys drawn out by the parties respectively, but told him that interest was due to and from the partnership on all the accounts in the books ; that the defendant believes, that, according to the custom of merchants, interest is chargeable to the plaintiff on all sums drawn out by him annually, though less than $2500 ; that if no interest had been charged on sums thus withdrawn, it was because the accounts had not been made up ; that those accounts which he rendered to the plaintiff, containing items of interest, were accounts with manufacturers, which were usually made up quarterly ; that there were a large number of accounts on which no interest had been charged, it being usual to make up the interest at the time of settlement, which the plaintiff knew ; that during the plaintiff's examination of the books, he made a mem-

orandum of things that he intended to dispute, submit to arbitrators or adjust, and the defendant made additions to the same, which memorandum contained, among others, the following items ; — Rent charged, $37·50 ; — Insurance premium, $50 ; — Cash short, $113 ; — Note of J. J. Whiting paid to Owen and not accounted for, $144 ; — Interest on Mr. Lord's account of overdrawn according to the articles ; — that this last item was set down by the plaintiff after he received from the defendant a communication, dated January 4, 1826, as follows : — I will agree to your proposition, as made to Mr. Parks this day, upon condition that you may take one week from this day to decide on what amount to offer, and that I shall have one week from the time you hand me your terms to give you my answer ; " that on the back of this communication Parks wrote and signed, by mutual consent, a memorandum as being part of the agreement between the parties, as follows : — " I understand that Mr. Miller is to predicate the amount of their profits at such sum as he shall see fit, and offer to give and take in the proportion of seven twenty-fourth parts to Mr. Lord, and seventeen twenty-fourth parts to Mr. Miller ; the one who buys out the other is to give the other a bond to indemnify the other against any demands which may be claimed by individuals who have had dealings with them in business relating to the concern, and both parties to give up all bonds, articles of copartnership, and exchange their notes for receipts, and the party buying out the other is to pay all the debts and receive all the advantages of the concern ; the memorandum of matters in dispute to be submitted to arbitrators, if the parties do not agree. If Mr. Lord purchases, he is to give his notes to Mr. Miller payable in six, nine, and twelve months, in equal sums, with interest ; " that on the 10th of January, 1826, the plaintiff made the following written proposal to the defendant ; — " In conformity to your note of the 4th instant, accepting my proposition for an adjustment as to the supposed profits of our late concern, I hereby propose and do agree to estimate the net profits at $25,500 ; agreeable to that rate both parties will be considered as debtor for any amount drawn out beyond their proportion of profits arising from $25,500, the remaining matters to be adjusted

Miller
*v.*
Lord.

agreeable to Mr. E. Parks's written memorandum as to his understanding of it ; " that on the 17th of January, the proposal was accepted by the defendant in writing, as follows : — " I conclude to purchase and to take to myself all the effects of the old concern, agreeable to Mr. Parks's understanding, and shall make out your account in the course of a day or two, which of course is to be deducted from the balance which will be due you ; " that by virtue of this correspondence the defendant became the purchaser of all the plaintiff's interest in the joint concern, upon the terms therein mentioned ; that at the time of the purchase, the plaintiff was as well informed of the state of the concern as the defendant ; that it was understood that the purchaser was to have the benefit and stand the loss, if any ensued from errors in the books ; that the defendant having thus purchased out the plaintiff's interest, it became unnecessary to submit any of the matters contained in the memorandum before referred to, except Whiting's note ; that the plaintiff did not at any time object to comply with the bargain because that note or any other matters had not been submitted to arbitration ; that pursuant to the terms of the bargain, a balance of $ 1486·88 would be due to the plaintiff, charging him interest on the sums withdrawn annually under $ 2500 ; that the defendant has been at all times ready to comply with the agreement in the manner hereafter mentioned, and is now ready so to do ; that on the 4th of April, 1826, the defendant tendered his notes to the plaintiff for the balance of $ 1486·88; and also his bond to pay all the debts of the concern, and also an indenture whereby the plaintiff was to convey all his interest in the concern to the defendant, but the plaintiff refused to receive the notes and bond, and to execute the indenture, saying the amount was not right ; that the plaintiff has never given any other reason for refusing to comply with the agreement, except that the defendant had charged interest on sums withdrawn annually under $ 2500 ; that the plaintiff never stated to the defendant, before filing the bill, that sufficient accounts had not been rendered him, or that he was misled, in making the agreement, by any items in the books and accounts, nor that the bargain was for any reason void ; that the defendant has gone on to settle, collect, compound and enter into en-

gagements, in settling up, for his own account and benefit; and that he is now ready to fulfil the agreement according to its true intent and meaning.

The parties agreed to submit to the Court, as a preliminary question, the effect of the supposed agreement set forth in the defendant's answer, in regard to the jurisdiction of the Court as a court of equity.

The case was argued at the bar at March term 1828, and afterwards in writing, by *L. Shaw*, *W. Phillips* and *Bartlett*, for the plaintiff, and *Rand*, for the defendant.

On the part of the *plaintiff* it was contended, that the agreement ought not to defeat the bill or oust the jurisdiction, for the following reasons : —

1. The agreement was void for uncertainty appearing on the face of it.

The proposition was, that the plaintiff should estimate the profits at a sum for which he was willing to buy out or sell out. But profits were not the only matter to be settled between the parties. A number of charges were in dispute, which were to be the subject of agreement or reference after the profits were fixed. This is clear from Parks's memorandum. The estimate of profits, therefore, ascertained a part only of the amount in question between the parties. The disputed charges would form an addition to or diminution of that amount, according as they might eventually be determined by agreement or reference. This part of the consideration of the plaintiff's selling out, being by the papers made no further certain than leaving it to subsequent agreement or arbitration makes it, the plaintiff's first position is, that by reason of this uncertainty the agreement is not one of which a court of equity would decree the specific execution, and consequently it cannot be set up by the defendant in bar of the plaintiff's bill. *Keating* v. *Sparrow*, 1 Ball & Beatty, 367 ; *Hannet* v. *Yulding*, 2 Sch. & Lefr. 549 ; *Street* v. *Rigby*, 6 Ves. 818.

2. Another uncertainty arises on the construction of the word " profits " ; for it is plain from the bill and answer, that the plaintiff put one construction upon it in his proposition to the defendant, and that the defendant professes to have given it a different construction in his acceptance of the proposition :

that the plaintiff did not expect to be charged with interest upon sums drawn out for private expenses, though less than $2500 annually, whereas the defendant insists that such interest should be charged ; and this difference is an essential ingredient in the negotiation, as it makes the result vary nearly $2000. This misunderstanding and diversity of construction in the very concocting of the agreement, renders the agreement void, and at the same time brings the subject within equity jurisdiction. *Lindsay* v. *Lynch*, 2 Sch. & Lefr. 7 ; *Woollam* v. *Hearn*, 7 Ves. 211 ; *Higginson* v. *Clowes*, 15 Ves. 520 ; *Clowes* v. *Higginson*, 1 Ves. & Beame, 532. The ground upon which the defendant says he arrived at his construction of " profits," or the mode of computing profits, is mercantile usage. But it is immaterial how he arrived at it, if the plaintiff, in making his proposition, thought profits to be one thing, and the defendant, in accepting it, thought them to be another thing, making so great a difference in the result.

3. The defendant never accepted the proposition made by the plaintiff, and never has complied with nor been ready to comply with the terms of the agreement proposed by the plaintiff, as the Court will construe those terms ; and he has therefore no right to set up that agreement.

The articles of copartnership provide, that the plaintiff shall advance the whole capital of $20,000, which shall be carried to his credit on the books ; that annually, in December, the books shall be settled ; that the plaintiff shall have the right to draw from the stock of the firm annually $2500, and the defendant $300, and no more, with which sums they shall be each of them charged ; that the profits shall be annually made up and carried to the credit of each copartner ; and that at the end of the term of the copartnership, the parties shall divide the profits *then in* and belonging to the concern. These provisions show that no interest was to be charged on the sums thus annually to be withdrawn. Such withdrawal was in fact an annual, partial division of the profits, and it is absurd to say that the profits so divided are chargeable with interest. Further, according to the articles, two annual accounts of profits must have been made up by Lord, and the respective shares of profits credited to the parties, and it is alleged in

Miller
*v.*
Lord.

*Miller v. Lord.*

the bill, and admitted in the answer, that no charge of interest upon these sums annually withdrawn had ever been made, until after the defendant had accepted the plaintiff's proposition. Again, among the disputed charges on the memorandum kept mutually by the parties, is this entry ; — " Interest on Lord's account of overdrawn according to the articles." These words show, that in estimating the profits, the plaintiff found that the defendant had in one or more years drawn more. than the $ 300, and the memorandum is made, that the defend ant is chargeable with interest on the excess. It is therefore contended for the plaintiff, that sufficient is shown to induce the Court to say that the plaintiff *might*, in making the contract, reasonably understand, that in the word *profits* was not included the interest now claimed. The construction under which the plaintiff acted in making his offer, is the construction which will be adopted by a court of equity. *Stoughton* v. *Lynch*, 1 Johns. Ch. R. 467 ; *S. C.* 2 Johns. Ch. R. 210. If the Court shall adopt the plaintiff's construction of his proposition, it is too late for the defendant to say he is ready to comply with it, for the plaintiff's object was an immediate settlement of the concern, and this was the consideration of the advantageous offer which he made to the defendant.

4. Admitting the agreement to be valid and binding upon both parties, the plaintiff has a right, under this bill, to claim the execution of the agreement, by having an account rendered upon the principles of it, and to seek relief i equity. The case is covered by the prayer in the bill both for general and specific relief. *Wilkin* v. *Wilkin*, 1 Johns. Ch. R. 117 ; Blake's Ch. Pract. 31. Assuming that the bargain was founded on the estimate of the profits at $ 25,500, it is still necessary to ascertain from the articles of copartnership and the books and accounts which are in the defendant's hands, what is and what is not *profits*, and how much of what is *profits* has been received by the plaintiff as a copartner, and what interest, if any, he is to be charged with on sums received by him as such copartner. The Court have equity jurisdiction over these questions, by virtue of *St.* 1823, *c.* 140, § 2. See also 3 Bl. Com. 437 ; *Ludlow* v. *Simon*, 2 Caines's Cas. in Err. 37, 56 ; *Porter* v. *Kimberley*, 9 Johns. R. 470.

*Argument for the defendant.*　The plaintiff insists that the agreement was void for uncertainty appearing on the face of it ; and first, he alleges that the estimate of the profits was but one item in the bargain, — that there were certain items to be submitted to arbitration. This is not so. It appears from the bill and answer, that the items put down before the agreement was concluded, were charges against the defendant on his private account, which were to be submitted in case the plaintiff should purchase. As the defendant purchased, they could not be a subject of dispute. But if it had been otherwise, still a dispute respecting the amount of the plaintiff's private account could not affect the bargain. It had nothing to do with the price which the plaintiff agreed to take for his share. If the sum with which he was chargeable in his private account could not be fixed by the parties, it was to be settled by the law. No bargain was made or required to be made in regard to it.

The plaintiff contends, that there is uncertainty in respect to what was meant by *profits* ; that he never intended to be charged with interest on moneys withdrawn annually under $ 2500, in his private account, on which the defendant insists, and that this shows the parties never assented to the same proposition. What was intended by *profits* is plain from the face of the agreement ; and it is distinctly stated in the memorandum referred to by the parties, that the profits were estimated independently of the private account of the parties There never was any controversy about the terms of the bargain, nor can there be. The question in dispute between the parties respected solely this charge of interest in the plaintiff's private account, about which no agreement was intended to be made, other than that all should be paid or allowed that was legally due. Further, the agreement is in writing, and it is not for either party to defeat his own agreement by his own interpretation of it, or by pleading ignorance of its legal effect The law will interpret it for both. *Kennedy* v. *Lee*, 3 Meriv 441. Nor is it necessary that the agreement in all its parts should be completely settled. *Fowle* v. *Freeman*, 9 Ves. 355 ; *Ogilvie* v. *Foljambe*, 3 Meriv. 53.

The plaintiff insists, that the defendant has never accepted

the proposition made by the plaintiff, according to its legal construction, nor been ready to comply with it ; because, according to such construction, the interest in question ought not to be charged. This admits of two answers ; 1. the proposition and acceptance are in writing, and are to be interpreted only by the law ; and 2. the charge of interest was not a subject of the agreement, it being a part of the plaintiff's private account, which the bargain did not profess to liquidate. Furthermore, the defendant, in making the charge of interest, insists upon nothing more than is properly chargeable by law and mercantile usage. *Beecher* v. *Guilburn*, Moseley, 3.

The plaintiff insists, that admitting the agreement to be legal and binding, he can maintain his bill for the specific performance of it. The answer is obvious. 1. The bill does not seek a specific performance of the agreement, but seeks to set it aside. 2. There is no prayer for general relief, but only for an account of the property and effects in the defendant's hands belonging to the joint concern. 3. There is no partnership, that having been dissolved by the indenture ; and no joint interest, the plaintiff having sold his share to the defendant.

Furthermore, after having dissolved the copartnership and entered into an agreement under seal for the division of the property, and taken a bond for the performance of the covenants on the defendant's part therein contained, the plaintiff had a plain and adequate remedy at law, and this Court has no equity jurisdiction over his case.

But the plaintiff has really no ground for complaint ; the bargain was made with good faith on the part of the defendant, with one who was equally well acquainted with the subject matter of it, and he has at all times been ready to carry it into execution according to its true interpretation.

In *reply* it was said, as to the defendant's position, that the question about interest is a matter of private account between the partnership and the plaintiff, that so far from being a reason against the jurisdiction, it is precisely the reason why, independently of other grounds, the Court has jurisdiction. The *St.* 1823, *c*. 140, gives the Court jurisdiction of disputes " between copartners." Now all disputes between copartners,

as such, must relate to questions between the several partners and the copartnership. If the dispute is between the copartners jointly and another party, it is not the case intended by the statute ; if between the partners individually and having no connexion with the copartnership, it is then not the case contemplated by the statute.

As to the objection, that the plaintiff has an adequate remedy at law, on the covenants in the articles of copartnership, or the bond, we presume it is not assumed that this Court has no jurisdiction of transactions between partners who enter into articles under seal. This would be taking away a great part of the jurisdiction intended to be given by the statute, and would be introducing an entirely new rule on the subject of equity jurisdiction. And as to the circumstance of a bond being given by the defendant at the time of the dissolution, to account, this bond was merely *collateral* security that he would account. Collateral security sometimes gives chancery jurisdiction, but we know of no authority for the position that it will take away such jurisdiction. If the Court has chancery jurisdiction over the defendant's engagements or liabilities, then it certainly is not ousted merely because others have joined him in some or all of these engagements or liabilities.

One reason why the plaintiff has not an adequate remedy at law, is, that the case requires an account. He cannot know the amount of his claim without such an account, and the defendant has in his hands all the papers requisite for making out the account.

WILDE J. delivered the opinion of the Court. Several preliminary questions have been referred to the Court on a hearing upon the bill and answer, it being understood that a further hearing may be had, and evidence offered, should the decision of the Court on these questions make it necessary. The bill is founded on articles of copartnership between the parties, and seeks to obtain from the defendant, who was the acting partner, an account of the partnership concerns.

The defendant denies his liability to account, resting his defence on an agreement by which the plaintiff, for a stipulated sum, released and transferred to the defendant his share in the property and concerns of the partnership, and he contends,

Miller
v.
Lord.

that the plaintiff's only remedy is on this agreement, in an action at law. The plaintiff contends that this agreement is void, or if not, that it does not oust the Court of its jurisdiction in equity ; but that he is entitled to have an account stated, according to the stipulations and true construction of the agreement.

First, it was objected by the plaintiff, that the agreement was void for uncertainty. But it is quite clear that this objection cannot be sustained. The supposed uncertainty relates to the question of interest, and a few other items which were agreed to be submitted to arbitration. As to the interest, the agreement is silent ; and as to the other items, they are excluded by the terms of the agreement, and are open to examination. How far these disputed items are necessarily settled by the defendant's purchase of the plaintiff's share of the partnership effects, is a question to be settled hereafter ; but however it may be settled, it cannot affect the validity of the agreement in other respects.

The second objection of the plaintiff is, that there was a misunderstanding between the parties as to the principal matter of the agreement, so that there was not such a union of minds as is necessary to constitute a binding agreement. This misunderstanding, however, is not sufficiently proved. All that appears by the bill and answer is, that the parties, after the agreement was made, put a different construction on it ; an occurrence by no means uncommon. It is true, that the parties declare that they understood the agreement differently at the time it was made, but it does not appear that the construction which either party put on the agreement was made known to the other party until after the agreement was concluded ; both parties, therefore, are bound by the terms of the agreement, and it is to be construed by the Court. It would be a most dangerous doctrine, to hold that a party might release himself from the obligation of a contract by declaring that he understood it in a different sense from its true construction. The cases cited on this point give no support to such a position. In the case of *Woollam* v. *Hearn*, 7 Ves. 211, which was a bill for the specific performance of a written agreement for the lease of a house at a rent of £73 per an

num, it appeared by the testimony, that in the oral negotiation
the plaintiff had been made to understand by the other party,
that he was to have the premises at the rent of £ 60, the for-
mer rent. So in the other cases cited, the misunderstanding
of the parties was established by evidence. *Higginson* v.
*Cloues*, 15 Ves. 520 ; *Lindsay* v. *Lynch*, 2 Sch. & Lef. 7 ,
*Clowes* v. *Higginson*, 1 Ves. & Beam. 532.

Considering, then, the argument as valid, the question next
to be considered is, whether it ousts this Court of its jurisdic-
tion as a court of equity. And we think very clearly it does
not. The whole object and effect of the agreement is, to
transfer to the defendant the plaintiff's share of the profits and
effects of the copartnership. The defendant's counsel admit
that the private account between the parties remains open.
To settle this account the books of the concern are to be ex-
amined ; what items of account are to be included in the
plaintiff's private account, and what belong to the profits, is
to be determined ; and for these purposes an account must be
stated. It cannot be doubted, that such a subject of inquiry
is peculiarly proper for a court of equity. It is doubtful, cer-
tainly, whether an adequate remedy could be had in a court
of law, for an account could not be stated and understood
without the examination of the books, and if the defendant
should refuse to produce them, the powers of a court of law
to compel the production of them would be found defective.

The difficulties attending the settlement of long and difficult
accounts, especially between partners, in a court of law, have
long been known and felt, and to remove them was the object
of the statute conferring equity jurisdiction on the Court in
such cases. And we think that in all cases where an account
is to be stated between partners, this Court has jurisdiction
under the statute.[1] More or less difficulty may be involved
in different cases, but this difference cannot be ascertained
until after an examination of the partnership accounts, and will
not affect the question of jurisdiction.

---

[1] But the equity jurisdiction of this Court under the *St.* 1823, *c.* 140, did not
extend to suits between the members of a manufacturing or other corporation.
*Pratt* v. *Bacon*, 10 Pick. 123 ; *Russell* v *McLellan*, 14 Pick. 63. See *May* v.
*Parker*, 12 Pick. 34.

Miller
*v.*
Lord.

25

Miller
*v.*
Lord.

Nor does the dissolution of the partnership oust the Court of its jurisdiction. The act of 1823, *c.* 140, extends to all disputes between copartners *and their legal representatives,*[2] where there is no adequate remedy at law ; and consequently it must have been intended to operate on disputes arising after the partnership is dissolved, by the death of one of the partners or otherwise ; and so it was decided in the case of *Chandler* v. *Chandler*, 4 Pick. 78.

26

Considering, then, the transfer of the plaintiff as a valid contract, we are to determine what is the. true construction of that contract ; and as to this the only question is, whether, under the transfer of profits, the defendant is entitled to charge interest on the sums annually withdrawn by the plaintiff from the stock, in pursuance of the articles of copartnership. This question depends rather upon the articles of copartnership, than upon the subsequent agreement and transfer. If, by the articles of partnership, the plaintiff was liable to the claim of interest, then undoubtedly the defendant is entitled to charge it by virtue of the plaintiff's release and transfer of his share in the profits and effects of the firm ; otherwise not. The general principle is, that where there is no agreement to - pay interest, none can be charged until the principal sum falls due ; for if interest is not included in the terms of the contract, it can be only claimed as damages for the detention of the debt. There are, however, some exceptions to this rule ; as where fraud is proved in the party to be charged, and in cases depending on mercantile usage. And on the latter ground the defendant rests his claim. But this supposed usage is neither proved nor admitted, and consequently cannot at present affect the question. In the case of *Stoughton* v. *Lynch*, 1 Johns Ch. R. 467, it was held that a copartner was liable to account for interest and profits made on any sum withdrawn from the partnership funds, but was . not so liable for money withdrawn for the partner's private .expenses in pursuance of the articles of copartnership. We however give no opinion as to the question of mercantile usage. If that usage should be deemed

---

[2] It seems that the heirs of a deceased partner are " legal representatives, within the meaning of this statute (Rev. Stat. *c.* 81, § 8). *Johnson* v. *Ames*, 11 Pick. 173.

material by the defendant's counsel, it must be either proved or admitted before it can affect the construction of the articles of partnership, or the rights of the parties. How far such a usage, if established, would bear upon the case, it is not necessary now to decide, but there is certainly nothing in the stipulations or the conduct of the parties previous to the transfer, which can support the defendant's claim of interest. By the terms of the articles of partnership, the inference is, that the sums to be withdrawn were considered as a division of profits in advance ; and even if they were considered as loans, they were loans not upon interest ; they were withdrawn under a written contract, and the presumption is, that if interest was intended to be charged, it would have been so expressed in the contract. It appears, also, that the defendant, in making up accounts of profits during the partnership, did not charge any interest on the sums withdrawn.[1]

Upon the whole, it appears to the Court, that the contract of transfer and relinquishment is a valid contract binding on both parties ; — that a mere misunderstanding as to the construction of the terms of the contract, the same being fairly made, and the misunderstanding being unknown at the time, is no sufficient reason for annulling the contract ; — that this contract does not oust the Court of its jurisdiction in equity, the accounts between the parties being only partially liquidated ; — and that the construction of the contract of release is such as has been stated.

As to the form of the bill and its sufficiency, we think it well enough: On a bill to compel a party to account, it is sufficient to pray in substance, that he may be held to account. This includes something more than barely to state an account ; a party bound to account is bound thereby to pay any balance that may be found due. The prayer in the bill is, that the defendant may be required to render a just and true account of all moneys received by him, and of all the goods and effects

Miller
*v.*
Lord.

---

[1] Interest is not allowed on partnership accounts generally until after a balance is struck, on a settlement between the partners. *Dexter* v. *Arnold*, 3 Mason, 289.

Miller
v.
Lord.

of the concern ; and also *of all other matters relating to said concern ;* which last clause is equivalent to a prayer for general relief.

*Referred to a master.*