Billings, A.J.
The defendant was indicted for possession of heroin with intent to distribute (001) and possession of marijuana (002). Appended to no. 001 is a third indictment charging him, under G.L.c. 279, §25, with being an habitual criminal. It is this last that he seeks to dismiss, on the ground that the grand jury was not presented with probable cause to believe that he was “twice convicted of crime and sentenced and committed to prison . . . for terms of not less than three years each,” as the statute requires.
For the reasons that follow, the motion to dismiss so much of the indictments as charge the defendant with being a habitual criminal is ALLOWED.
FACTS
With respect to the habitual criminal charge, the grand jury (evidently, after having first indicted the defendant on the heroin and marijuana charges) heard from Detective James Hodgdon. The Detective presented certified copies of four convictions of the defendant, all on juiy verdicts from the Middlesex Superior Court and dated March 1, 1989, as follows.
*609 1. On Docket No. 89-554, the indictment charged that the defendant, on March 1, 1989,
did break and enter the dwelling house of Paul Petrosky in the night time with the intent to commit a felony, being armed with a dangerous weapon at the time of such breaking and entry to wit: a handgun, and did make an actual assault upon Paul Petrosky, a person lawfully therein . . .
The defendant was evidently sentenced to 10 to 12 years in State Prison on this indictment (although this portion of the record is missing from what was submitted with the Motion to Dismiss).
2. On Docket No. 89-556, the indictment charged that the defendant, also on March 1, 1989,
being armed with a dangerous weapon, to wit: a handgun, did assault Paul Petrosky with the intent to rob him, and thereby did rob and steal from the person of Paul Petrosky $200.00 U.S. Currency and a coat. . .
The sentence was 10 to 12 years in state prison, to run concurrently with the sentence in No. 89-554.
3. On Docket No. 89-559, the indictment charged that the defendant, also on March 1, 1989,
by means of a dangerous weapon, to wit: a handgun, did assault and beat Paul Petrosky . . .
The sentence was 9 to 10 years in state prison, also to run concurrently with the sentence in No. 89-554.
4. On Docket No. 89-560, the indictment charged that the defendant, also on March 1, 1989,
by means of a dangerous weapon, to wit: a shod foot, did assault and beat Paul Petrosky . . .
The sentence, too, was was 9 to 10 years in state prison, to run concurrently with the sentence in No. 89-554.
Notations on each of the latter three indictments indicate, “Mitts issued by the Court.”[1] The grand jury was presented with no details of the events of March 1, 1988, beyond the language just quoted from the indictments.
DISCUSSION
Chapter 279, Section 25 provides as follows:
Whoever has been twice convicted of crime and sentenced and committed to prison in this or another state, or once in this state and once or more in another state, for terms of not less than three years each, and does not show that he has been pardoned for either crime on the ground that he was innocent, shall, upon conviction of a felony, be considered.an habitual criminal and be punished by imprisonment in the state prison for the maximum term provided by law as a penally for the felony for which he is then to be sentenced.
The statute does not create a new crime, but mandates enhanced punishment for certain repeat offenders. McDonald v. Commonwealth, 173 Mass. 322, 326-327 (1899), aff'd., 180 U.S. 311 (1901). It has antecedents in “[a] system of aggravated penalties for persons convicted of crime after having been sentenced to imprisonment in a state prison,” dating back to the year 1817. Commonwealth v. Richardson, 175 Mass. 202, 205 (1900). As the SJC said in respect to the predecessor statute,
The object of the statute is to prevent the repeated commission of similar offenses, by imposing severer penalties for each successive violation of law, and thus to save persons from becoming old and hardened offenders.
Id. at 207, quoting Commonwealth v. Hughes, 133 Mass. 496, 497 (1882).
The penally was determined, no doubt, by the view that in such a case the criminal habit has become so fixed and the hope of reformation is so slight that the safety of society requires and justifies a long continued imprisonment of the offender.
McDonald v. Commonwealth, 173 Mass. 322, 328 (1899), aff'd., 180 U.S. 311 (1901).[2]
In both Commonwealth v. Keane, 41 Mass.App.Ct. 656 (1996), and Commonwealth v. Hall, 19 Mass.App.Ct. 1004 (1985), the Appeals Court considered and rejected challenges to convictions under c. 279, §25 on the ground that the defendant had received concurrent sentences on the earlier offenses, and thereforeeach defendant arguedhad not “been twice . .. committed to prison” in the manner that the statute requires. The Keane opinion states:
Concurrent prison sentences, imposed for separate and distinct offenses, together with a third conviction of a felony, support a finding of habitual offender status under the statute,
but otherwise reveals nothing concerning the prior offenses, or what the court felt made them “separate and distinct.” In Hall, the court said:
that on February 25, 1977, the defendant had pleaded guilty to two separate indictments drawn under G.L.c. 266, §15 [unarmed burglary], which alleged separate and distinct offences committed at different times and places; that the defendant received concurrent sentences to M.C.I., Walpole, of from five to twelve years on both indictments; that those sentences were ordered to take effect forthwith and notwithstanding a sentence which the defendant was then serving in a house of correction; and that a separate mittimus issued on each indictment . . . (Emphasis supplied.)
The court held these facts, together with the defendant’s subsequent burglary conviction in the case on appeal, were sufficient to support a finding that he was an habitual criminal. See also Commonwealth v. Phillips, 28 Mass. (11 Pick.) 27, 34 (1831) (Shaw, C.J.) (two convictions “for two distinct larcenies or other crimes . . . are two convictions within the *610 meaning of this statute,” even though rendered in the same term of the same court).
This is, however, the case that Hall and (so far as appears from the published opinion) Keane were not. The defendant is burdened with four prior felony convictions on which he received state prison sentences of not less than three years each, and so comes within one possible, literal reading of the statute. On the other hand, his were not “separate and distinct offences committed at different times and places.” Hall For all that appears in the record, on March 1, 1989, the defendant broke into Paul Petrosky’s home, brandished a handgun and struck him with it, demanded and received $200 and a coat, and left, all in the space of a few minutes. The resulting convictions establish that he is a serious offender. The issue for decision is: do they establish him as an “habitual” one, within the meaning of the statute?
A review of reported cases from other states and the federal courts, many of which are collected at Annot., “Habitual Criminal Statutes,” 7 A.L.R.5th 263 at 3[a] and [b] (1992), reveals a dizzying array of both legislative and judicial approaches to the issue. There is no Model Act on the subject. Occasionally, the language of a particular repeat offender statute points the way. See, e.g., United States v. Towne, 870 F.2d 880, 888-91 (2d Cir. 1989) (reading the reference, in 18 U.S.C. §924(e)(1), to “three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another” to bar double-counting of convictions arising from a single criminal “episode"); Miller v. State, 675 P.2d 453, 455 (Okla. Crim. 1984) (applying 21 O.S. 1981 §51(B), which provides, "Felony offenses relied upon shall not have arisen out of the same transaction or occurrence or series of events closely related in time and location”) .
Most such statutes, however, are like Massachusetts’ in that they refer only to a specified number of prior convictions, leaving the courts to determine when, if ever, multiple convictions must be counted as one. Judicial constructions of these nonspecific statutes have gone in numerous different directions.
A minority of jurisdictions have held that as long as the defendant has the specified number of prior convictions, he is subject to whatever consequences the statute provides, regardless of how those convictions were accrued. E.g., Knight v. State, 277 Ark. 213, 640 S.W.2d 442, 444 (1982) (four prior convictions arising out of single transaction, resulting from simultaneous guilty pleas, and yielding concurrent sentences treated as separate); State v. Baudler, 349 N.W.2d 493, 495 (Iowa 1984) (five convictions arising out of a single incident counted separately).
Other decisions have balked at separate counting of offenses that were charged as separate counts in the same indictment, or were sentenced on the same day or in the same term of court. See generally Benton v. Maryland, 395 U.S. 784, 790 (1969) (“The majority rule is, apparently, that all convictions handed down at the same time count as a single conviction," but noting that “a few States . . . consider all prior felony convictions ... even if the convictions actually constituted only separate counts in a single indictment tried on the same day”; citing Annot., “Habitual Criminal Statutes,” 24 A.L.R.2d 1262 (1952)).
Still other courts have focused more precisely on the sequencing of the convictions, the sentences, or some combination thereof. See generally the Annotation at 7 A.L.R.5th 263, referred to above, and the cases collected therein. The Keane, Hall and Phillips cases appear to foreclose this approach for Massachusetts, but according to one decision, “(the rule followed in the majority of jurisdictions is that each successive felony must be committed after the previous felony conviction in order to count towards habitual criminal status.” State v. Tavares, 63 Haw. 509, 630 P.2d 633, 636 (1981). Other courts have added the wrinkle that the successive sentences must have been separated by intervals of liberty, so as to ensure that the offender has been given a prescribed number of “separate chances to reform” before being considered, and punished as, an habitual offender. Hall v. State, 473 A.2d 352, 356-57 (Del. 1984); accord, People v. Spellman, 136 Misc. 25, 29, 242 N.Y.S. 68 (1930) (statute applied “only after three or more fully completed, legal, prior judgments of conviction, separated sufficiently to offer opportunity for the felon to reform”).
Finally, some courts have looked past procedural considerations and inquired simply whether the multiple convictions resulted from a single transaction, as measured by the date and time, the place, and (sometimes) the victim. If so, the multiple convictions are counted as one. E.g., State ex rel. Porter v. Butler, 573 So.2d 1106, 1109 (La. 1991); People v. Stroudemire, 429 Mich. 262, 414 N.W.2d 693 (1987); Regin v. State, 95 Nev. 461, 596 P.2d 226, 227 (1979). As noted above, this approach is required by the language of the federal armed career criminal statute, 18 U.S.C. §924(e)(l). In determining whether prior offenses were “committed on occasions different from one another” as the statute requires, federal courts have “consider[ed] such factors as whether the offenses (1) occurred in different geographic locations; (2) were of a substantively different nature; (3) and involved multiple criminal objectives or victims.” United States v. Williams, 187 F.3d 429 (4th Cir. 1999).[3]
I believe that, when squarely confronted with the question, our appellate courts will adopt the “common occurrence” or “criminal episode” approach to whether an offender “has been twice convicted of crime and sentenced and committed to prison . . . for terms of not less than three years each” within the meaning of G.L.c. 279, §25. Otherwise, the consequence of the third convictionbeing “considered an habitual crimi *611 nal” and being punished as suchwould make little sense. The Legislature, in requiring not one but two prior offenses before enhancing the punishment for the third, has evidently made a considered judgment about when “the criminal habit has become so fixed and the hope of reformation so slight that the safety of society requires and justifies a long continued imprisonment for the offender.” McDonald, 173 Mass. at 328. The fact that a single prior criminal episode involved multiple offenses may well have warranted greater punishment overall for that episode, but it says little about the defendant’s likelihood of “becoming [an] old and hardened offender]]” if he is not given the maximum sentence for the second episode. Hughes, 133 Mass. at 497.
A spree is not a habit. To be adjudged an habitual criminal under the statute, the defendant must have at least two prior convictions with qualifying sentences, resulting from separate, prior criminal episodes.[4]
ORDER
Because the grand jury in this case was presented with evidence only of a single prior criminal episode, there was not probable cause to indict the defendant as an habitual criminal. So much of the indictments as charge him under c. 279, §25 will therefore be dismissed.

This was sufficient probable cause that the defendant was not only sentenced, but incarcerated, as the statute requires. See Commonwealth v. Youngworth, 48 Mass.App.Ct. 249, 251-52 (1999].

The author of New York’s habitual offender statute put the case at somewhat greater length:
The theory of the Fourth Offender Act is not punishment at all, but it is protection to the public. The man who has been convicted once, twice, three times, sentenced and served his time and comes (sic) out and resumed operations again has proven to you and me that he cannot learn his lesson. He is incurable. He is non-reformable. And either he cannot or he will not adjust himself to the fixed and settled rules and regulations of society and civilization ... He is a habitual criminal, a menace to society, and as such should be segregated from society for the good of society and perhaps for his own good as well.
Baumes, “The Baumes Laws and Legislative Program in New York,” 52 ABA Rep. 511, 521 (1927), quoted in People v. Stroudemire, 429 Mich. 262, 414 N.W.2d 693, 696 (1987).

The Williams case illustrates the point that application of the “same transaction” test to particular facts may sometimes be as nuanced in this as it is in other areas of the law. There, the defendant had three prior convictions for conduct committed on a single day (indeed, it appears, within the space of less than an hour), as he fled from, and discharged a firearm at, three members of the North Carolina Highway Patrol who pursued him after he failed to stop at a traffic checkpoint. Noting that “the offenses were separated in time by at least 10-15 minutes and occurred at least three blocks apart,” and reasoning that these intervals “provided [the defendant] with the opportunity to reflect and desist,” the court tallied the resulting “one count for assault with a firearm on a government officer... and two counts of assault with a deadly weapon with intent to kill" as three separate offenses under the statute.

In addition to best fitting the language and purpose of the statute, the rule that two strikes may not be incurred on a single pitch also respects “two fundamental principles of statutory construction: (1) criminal statutes are strictly construed against the Commonwealth, and (2) any plausible ambiguity must be resolved in favor of the defendant.” Commonwealth v. Youngworth, 436 Mass. 608, 611 (2002), see also Phillips, 28 Mass. at 33 (enhanced punishment for habitual offenders “is founded solely on statute, is not known at the common law, is in a high degree penal, and therefore is not to be extended by construction beyond the cases clearly contemplated in the statute”).