PEOPLE v HAMPTON

Docket No. 114098. Submitted February 14, 1990, at Lansing. Decided July 2, 1990. Leave to appeal applied for.

Michael Lynn Hampton was convicted of third-degree criminal sexual conduct following a jury trial in Bay Circuit Court, Eugene C. Penzien, J. Defendant subsequently pled guilty to a charge of being a third felony habitual offender and was sentenced to eleven to thirty years imprisonment. After the Supreme Court's decision in *People v Stoudemire,* 424 Mich 262; 414 NW2d 693 (1987), defendant filed a motion in the trial court seeking resentencing as a second felony offender on the ground that his two previous felony convictions arose out of a single criminal transaction and should be considered as only one conviction for purposes of the habitual offender statute. The court denied the motion for resentencing. Defendant appealed by leave granted.

The Court of Appeals *held:*

1. Defendant's two previous convictions count as only one for the purpose of charging defendant under the habitual offender statute since both convictions arose out of a single incident and were obtained at the same time. Because defendant was convicted of the two earlier felonies at the same time, he had only one opportunity to reform between those convictions and commission of this latest felony. Therefore, defendant can be charged only as a second felony habitual offender and must be resentenced accordingly.

2. Defendant's claim that the trial judge should have disqualified himself because he was the Bay County Prosecuting Attorney at the time of defendant's prior convictions was not preserved for appeal. Even so, the judge was not required to disqualify himself simply because he was the prosecutor at the time of defendant's prior convictions.

Reversed and remanded for resentencing.

REFERENCES

Am Jur 2d, Habitual Criminals and Subsequent Offenders §§ 6, 10; Judges §§ 164, 196, 197.

Prior representation or activity as prosecuting attorney as disqualifying judge from sitting ar acting in criminal case. 16 ALR4th 550.

1. CRIMINAL LAW — HABITUAL OFFENDERS — MULTIPLE CONVICTIONS.

  Multiple convictions of a person which arise out of a single transaction may count only as a single prior conviction for purposes of the habitual offender statute (MCL 769.10-769.14; MSA 28.1082-28.2085[1]).

2. CRIMINAL LAW — JUDGES — DISQUALIFICATION OF JUDGE — FORMER PROSECUTING ATTORNEYS.

  The mere fact that a judge was the prosecuting attorney at the time of a defendant's earlier convictions does not, without more, disqualify the judge from presiding over the defendant's criminal trial.

Michael Lynn Hampton, in propria persona. ·

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people.

Before: MICHAEL J. KELLY, P.J., and WAHLS and SAWYER, JJ.

WAHLS, J. On January 3, 1986, a Bay Circuit Court jury convicted defendant of third-degree criminal sexual conduct, MCL 750.520d; MSA 28.788(4). Defendant subsequently pled guilty to a supplemental information charging him as a third felony habitual offender, MCL 769.11; MSA 28.1083, and was sentenced to eleven to thirty years imprisonment. Defendant appealed his conviction of criminal sexual conduct and we affirmed. *People v Hampton,* unpublished opinion per curiam of the Court of Appeals, decided March 10, 1987 (Docket No. 90767). After the Supreme Court decided *People v Stoudemire,* 429 Mich 262; 414 NW2d 693 (1987), defendant filed a motion in the trial court for resentencing as a second felony habitual offender, MCL 769.10; MSA 28.1082. Defendant appeals by leave granted from a June 24,

1988, Bay Circuit Court opinion and order denying his motion for resentencing. We reverse.

The facts are not in dispute. Defendant's third felony conviction was for having sexual intercourse with a fourteen-year-old girl contrary to § 520d(1)(a). Regarding defendant's prior felony convictions, defendant was charged in separate informations with breaking and entering two separate commercial buildings at two separate locations within one hour on August 21, 1969, contrary to MCL 750.110; MSA 28.305. The informations were filed in Bay County on October 20, 1969. Defendant pled guilty to the charges and was sentenced at one court appearance in 1969.

We find that under *Stoudemire* defendant has been convicted only once for the purpose of charging defendant under the habitual offender statutes, MCL 769.10 *et seq.*; MSA 28.1082 *et seq.,* even though defendant has two prior felony convictions. Therefore, we conclude defendant can be charged only as a second felony habitual offender in connection with his criminal sexual conduct conviction.

I

MCL 769.11(1); MSA 28.1083(1), as amended by 1978 PA 77, provides in part:

> If a person has been convicted of 2 or more felonies, . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction as [a third felony habitual offender.]

In *Stoudemire,* the defendant was charged under the similar provisions of MCL 769.12; MSA 28.1084, fourth felony habitual offender. *Stoude-*

*mire, supra,* p 264. The specific issue presented was "whether Stoudemire was properly charged as an habitual offender with three prior convictions where the three convictions arose out of a single transaction." *Id.* The Court found that the Legislature intended that § 12 "reach only incorrigible criminals who had failed three separate times to reform." *Id.,* p 266. Therefore, the Court held that "multiple convictions arising out of a single incident may count as only a single prior conviction for purposes of the statute." *Id.,* p 278.

Since *Stoudemire,* a number of panels of this Court, including two decisions in which this author concurred, have purported to limit *Stoudemire* precisely to the specific facts and question presented, and have held that convictions for crimes committed in separate transactions count as separate convictions for purposes of the statute, even if the convictions are obtained on the same day, because the felon rejected the opportunity to reform after each criminal transaction. See *People v Bettistea (After Remand),* 181 Mich App 194; 448 NW2d 781 (1989); *People v Reed,* 172 Mich App 182; 431 NW2d 431 (1988); *People v Jones,* 171 Mich App 720; 431 NW2d 204 (1988); but see *People v Holguin,* 180 Mich 429; 447 NW2d 753 (1989), lv den 433 Mich 900 (1989). We do not believe that *Stoudemire* can be so limited by this Court.

A

In *Stoudemire,* Justice ARCHER argued that § 12, as all statutes, should be construed literally, according to its plain language, unless doing so would cause an absurd or unjust result. *Stoudemire, supra,* pp 280-281. Finding that a literal construction of § 12 does not lead to an absurd or

unjust result, Justice ARCHER would have held that a person such as Stoudemire with three prior felony convictions who commits a subsequent felony may be subjected to enhanced sentencing under § 12, regardless of whether the prior felony convictions arose out of the same criminal transaction. *Stoudemire, supra,* pp 282, 289. However, the six-justice majority rejected Justice ARCHER's literal construction of § 12, finding that other rules of statutory construction required a different result.

**B**

The *Stoudemire* majority began its analysis by stating that "[l]egislative purpose is the lodestar of statutory construction." *Stoudemire, supra,* p 265. Legislative intent "must be given effect, even if doing so might appear to conflict with the letter of the statute." *Id.,* p 266. In other words, the majority position on statutory construction was that legislative intent controls over the literal meaning of the words used to convey the legislative intent.

In their attempt to discern the legislative intent of § 12, the Court noted that, as originally enacted in 1927, § 12 provided:

> A person who after having been three times convicted . . . of felonies . . . commits a felony within this state, must be sentenced upon conviction [as a fourth felony habitual offender.] [*Id.,* p 267, n 9.]

Section 12, and the corresponding provisions of §§ 10 and 11, remained basically the same until amended by 1978 PA 77. See *Stoudemire, supra,* pp 276-277. The Court found that considering the 1978 amendment "in the context of the other changes made in the statute it is clear that the

Legislature intended only to improve the statute's grammar, not to alter its underlying meaning." *Id.,* p 278. Since the alterations were "stylistic, not substantive," they "[did] not alter the legislative purpose expressed in the original 1927 statute." *Id.*

The majority reviewed the legislative history of Michigan's habitual offender statute and the New York habitual offender statute, the language of which Michigan "adopted *in toto*" in 1927. *Stoudemire, supra,* p 267. On the basis of that review, the majority concluded:

> [T]he Legislature, by using the phrase "after having been three times convicted," intended that the fourth-offender penalties reach only incorrigible criminals who had failed three separate times to reform—who had been convicted three separate times where the last two convictions were for crimes committed after the prior conviction. [*Stoudemire, supra,* p 266.]

See also *Stoudemire, supra,* pp 271, 276. The majority explained that "[w]hen the Legislature uses a shorthand expression," as in this instance with "after having been three times convicted," "legislative intent controls over an arguably literal reading of the statute inconsistent with that intent." *Stoudemire, supra,* p 266.

After reviewing *Stoudemire,* this Court in *Jones, supra,* p 726, wrote:

> The majority opinion in *Stoudemire* makes it very clear that the escalating penalties provided in the habitual offender statute were intended by the Legislature to be applied to the professional criminal and the hard-core recidivist who, after having had opportunities to reform, nevertheless continued in his criminal activities.

The majority opinion in *Stoudemire,* as well as the

language of the 1927 statute and the present statute, also makes it very clear that the "opportunity to reform" significant for the purpose of applying the habitual offender statutes occurs "after having been . . . convicted." 1927 PA 175, § 12. See *Stoudemire, supra,* pp 266, 271, 276. See also *id.,* pp 268-271 (discussion of New York statute), 272 (majority rule that "prior 'convictions' reflect previous opportunities to reform"). Therefore, while we agree with *Jones* that "[i]t is not . . . absolutely necessary that, in order to be afforded an *opportunity* to reform, a defendant must first complete a previously imposed sentence," *Jones, supra,* pp 727-728, we believe the *Jones* Court erred when it found opportunities to reform between each separate criminal transaction. *Jones, supra,* p 728.

In *Bettistea, supra,* p 200, this Court stated that the "rationale" underlying *Stoudemire* is that "the habitual offender statute is meant to be applied to persons who, after conviction, have had an opportunity to reform." *Bettistea* then criticized the "rationale" as being "well beyond the holding." *Bettistea, supra,* p 201. We acknowledge that the specific question presented in *Stoudemire* was whether three convictions arising out of a single transaction could be counted as separate convictions under the habitual offender statutes. However, we do not agree that the "rationale" of *Stoudemire* was well beyond its holding. Clearly, in order to answer the specific question presented, the Supreme Court first had to resolve the broader issue of legislative intent. See *Stoudemire, supra,* pp 265-267, and cases cited (legislative intent is "lodestar" of statutory construction). We qualify our disagreement with *Bettistea* by emphasizing our understanding of *Stoudemire* that the felon's opportunity to reform begins immediately upon

conviction, not sentencing. See *Bettistea, supra,* pp 200-201 (citing dicta in *Stoudemire*).

*Stoudemire* is not a case where the opinion of a majority of justices on an issue in a case is obscured by numerous concurrences in a plurality opinion. See, e.g., *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988); but see *Li v Feldt,* 434 Mich 584, 590-594; 456 NW2d 55 (1990), (*Hadfield* actually unanimous on historical approach to exceptions to governmental immunity). In *Stoudemire,* there is no mistaking the majority's opinion: six justices agreed that the legislative intent of § 12 was to allow enhanced punishment of "only incorrigible criminals who had failed three separate times to reform—who had been convicted three separate times where the last two convictions were for crimes committed after the prior conviction." *Stoudemire, supra,* pp 266, 271, 276. In conjunction with the numerous clear statements of their opinion on legislative intent, the majority also set forth an exhaustive study of legislative history and case law in support of their opinion on legislative intent. See *id.,* pp 270-276. The majority ultimately held, "*consistent with the legislative purpose underlying the habitual offender statute,* that multiple convictions arising out of a single incident may count as only a single prior conviction for purposes of the statute." *Id.,* p 278, emphasis added. Thus, rather than specifically limiting its holding, the six-justice majority meant to require this Court and lower courts to follow its exhaustive analysis and opinion on legislative intent underlying the statute and the Court's holding.

C

Applying *Stoudemire* to the facts in this case,

we find that defendant has been convicted only once for the purpose of charging defendant under the habitual offender statutes, MCL 769.10; MSA 28.1082, since both convictions were obtained at the same time. Defendant has had only one opportunity to reform since that time, which opportunity he rejected. Therefore, defendant can be charged only as a second felony habitual offender, MCL 769.10; MSA 28.1082, and must be resentenced accordingly.

II

Regarding defendant's remaining claim that the trial judge should have disqualified himself, we find that defendant failed to preserve the issue because he did not move for disqualification pursuant to MCR 2.003(C)(1). *People v Mixon,* 170 Mich App 508, 514; 429 NW2d 197 (1988), modified 433 Mich 852 (1989). Assuming, however, that the issue is properly before us, we find that the Bay Circuit judge in defendant's criminal sexual conduct case was not required to disqualify himself simply because he was the Bay County Prosecutor at the time of defendant's prior convictions. *People v Jankowski,* 130 Mich App 143, 147-148; 342 NW2d 911 (1983).

Reversed and remanded for proceedings consistent with this opinion.