BUSINESS AVIATION OF SOUTH DAKOTA, INC.; Richard F. Corrington, individually and as trustee for Corrington Trust A, Corrington Trust B, and Corrington Trust C; Frances B. Corrington; Richard F. Corrington, Jr.; William B. Corrington; James F. Corrington; Frances Corrington; The Corrington Foundation; Lime Kiln Arts, Inc.; Lincoln Partners; Stephen J. Williams; Nicholas Julian, Jr.; John F. Hanzel; John W. Cookson; Richard Cummings; Sedona Self–Realization Group; William J. Jennings; Glenn R. Lowe; and Wallace M. Rudolph, Plaintiffs and Appellees,

v.

MEDIVEST, INC.; Eugene R. McDannald, Jr.; William R. Stoddard; John M. Williams; Robert W. Lynch; and William R. Reid, Defendants and Appellants.

No. 880432.

Supreme Court of Utah.

Oct. 13, 1994.

· Richard J. Leedy, Salt Lake City, for plaintiffs.

Thomas N. Crowther, Salt Lake City, for defendants.

RUSSON, Justice:

Defendants Medivest, Inc. (Medivest), and the five members of its board of directors appeal from that portion of the trial court's entry of final judgment which held that (1) the Medivest shares of stock issued to three members of the board on July 13, 1988, are control shares subject to the provisions of the Control Shares Acquisitions Act, Utah Code Ann. §§ 61–6–1 to –12, and (2) the Medivest shares of stock owned by plaintiffs, who are Medivest shareholders, are not control shares subject to the same act. We affirm.

1. 15 U.S.C. § 78m(d) requires that shareholders soliciting proxies state their purpose in a schedule 13D filed with the Securities and Exchange Commission.

2. The board of directors actually authorized the issuance of 6,004,918 new shares of stock in the amounts of 5,804,918 shares to McDannald, 100,000 shares to Stoddard, and 100,000 shares to Williams. The trial court, however, invalidated 4,872,253 of the 5,804,918 shares of stock issued to McDannald because some of those shares had been issued on erroneous information and were therefore issued without legal consider-

## FACTS

Commencing July 12, 1988, plaintiffs each signed a separate, identical document entitled "Letter of Engagement," which stated that First Global Securities, Inc. (First Global), was being retained as an agent to assist them in removing the current board of directors of Medivest. Also on July 12, one of the plaintiffs, pursuant to the requirements prescribed in Medivest's bylaws, requested a special shareholders meeting for the express purpose of removing the board of directors and electing a new board. This request was denied by Medivest's board of directors.

On August 19, 1988, plaintiffs filed a schedule 13D with the Securities and Exchange Commission.[1] Enclosed with this schedule 13D was a form copy of plaintiffs' letter of engagement. The schedule 13D stated that (1) because plaintiffs questioned whether the current board of directors was effectively discharging its fiduciary responsibilities, they were intending to obtain control of the company possibly by soliciting proxies to elect new directors of the company, and (2) it was to this end that each of the plaintiffs had agreed to engage an agent.

On July 13, 1988, in response to plaintiffs' actions, the Medivest board of directors met and issued 1,132,665 new shares of Medivest stock to three of its members, Eugene R. McDannald, Jr., William R. Stoddard, and John M. Williams.[2] The issuance of this stock was an attempt to increase the percentage ownership of stock by the current board of directors in order to maintain control of the corporation.

On July 14, 1988, plaintiffs filed suit against defendants, alleging that the shares

ation and others had been issued in return for an agreement by McDannald to guarantee, at future dates, proposed loans to Medivest. The trial court ruled that the issuance of these invalid shares of stock was void and required that they be submitted for cancellation. Defendants do not challenge this ruling.

The trial court found that the remaining 932,-665 shares of stock issued to McDannald and the 100,000 shares of stock issued to Stoddard and Williams respectively were properly issued for past guarantees of indebtedness to Medivest.

of stock issued to McDannald, Stoddard, and Williams were control shares subject to the Control Shares Acquisitions Act (the Act), which states in part:

(1) Control shares acquired in a control share acquisition have the same voting rights as were accorded the shares before the control share acquisition only to the extent granted by resolution approved by the shareholders of the issuing public corporation.

(2) To be approved under this section, the resolution shall be approved:

(a) by each voting group entitled to vote separately on the proposal by a majority of all the votes entitled to be cast by that group, excluding all interested shares[.]

Utah Code Ann. § 61–6–10. Claiming that the said shares amounted to control shares, plaintiffs' complaint sought an order prohibiting defendants from voting these shares.

Defendants counterclaimed, asserting that because plaintiffs had agreed to vote their shares of stock for the removal of the present board of directors and had expressed in their letters of engagement their intent to direct the exercise of voting power to that end, such shares became control shares acquired in a control share acquisition and, pursuant to section 61–6–10, should be excluded from voting.

Following a bench trial, the district court concluded that the July 13 acquisition of 1,132,665 shares of Medivest stock by McDannald, Stoddard, and Williams, increasing their percentage ownership from 18.76 to 25.33 percent of Medivest's issued and outstanding stock, constituted a control share acquisition and therefore the new shares could be afforded voting rights only upon the adoption of a resolution by the majority of noninterested Medivest shareholders. With respect to defendants' counterclaim, the district court concluded that the actions of plaintiffs in agreeing to vote their already existing shares per their letters of engagement did not constitute a control share acqui-

sition and therefore those shares were not subject to the Act.

Defendants appeal, challenging the district court's determination that (1) the 1,132,665 new shares of stock issued on July 13 to McDannald, Stoddard, and Williams are subject to the Act, and (2) plaintiffs' already existing shares of stock are not subject to it.

## STANDARD OF REVIEW

■ Because this case presents solely a question of law, namely, whether the district court correctly interpreted the Act, we apply a correction of error standard. *See Allen v. Utah Dep't of Health*, 850 P.2d 1267, 1269 (Utah 1993).

## ANALYSIS

### A. Defendants' Shares

■ Defendants argue that the Medivest shares of stock issued to McDannald, Stoddard, and Williams on July 13 are not subject to the Act because (1) defendants are outside the purpose of the Act, which they claim is to protect Utah corporations from outside hostile takeovers, and (2) the shares of stock were newly issued shares, rather than "issued and outstanding shares," to which the Act has no application.

■ Statutes should generally be construed according to their plain meaning. *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989); *accord Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988). When reviewing a statute, we "assume[ ] that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991).

■ Defendants first argue that they are outside the purpose of the Act, which they claim is to protect Utah corporations from outside hostile takeovers. However, no such purpose is stated in the Act, nor can the Act's language be read to imply such a purpose.[3] Nowhere in the Act are the words

---

**3.** In fact, the legislative history of the Act suggests a broader purpose. During debate on the

House floor, the sponsor of the bill in the House, Representative Johnson, stated that the Act

"outside," "hostile," or "takeover" used. Our "'interpretation [of a challenged statute] must be based on the language used, and . . . the court has no power to rewrite a statute to make it conform to an intention not expressed.'" *In re Criminal Investigation, 7th Dist. Court No. CS–1,* 754 P.2d 633, 640 (Utah 1988) (quoting *Mountain States Tel. & Tel. Co. v. Public Serv. Comm'n,* 107 Utah 502, 505, 155 P.2d 184, 185 (1945)). Because the statute does not indicate that the *sole* purpose of the Act is to protect corporations from outside hostile takeovers, we reject defendants' argument.

■ Defendants' second argument is that the Act's use of the term "issued and outstanding shares" should not be read to include newly issued shares. We disagree.

The Act states in part:

As used in this chapter, "control share acquisition" means the acquisition, directly or indirectly, by any person of ownership of, or the power to direct the exercise of voting power with respect to, issued and outstanding control shares.

Utah Code Ann. § 61–6–3(1). Control shares are defined as shares that have the voting power so as to be able "to exercise or direct the exercise of the voting power of the issuing public corporation in the election of directors" of at least one-fifth of all voting power. Utah Code Ann. § 61–6–2.

Reading the Act to exclude newly issued shares of stock from the term "issued and outstanding shares," as defendants would have us do, would improperly allow a board of directors to defeat any challenge to their control of a corporation by giving its members controlling voting power in the form of additional shares of stock whenever shareholders seek the election of a new board of directors. This is precisely what happened in the case at bar. Here, defendants, by issuing new shares to McDannald, Stoddard,

and Williams, have changed the proportional voting power of Medivest in order to maintain control of the corporation. In taking such action, defendants have acquired the power to direct the exercise of the voting power of Medivest in violation of the Act. Thus, we reject defendants' reading of the Act and conclude that the trial court correctly interpreted the Act to apply to that issuance.

### B. Plaintiffs' Shares

■ Defendants argue that plaintiffs' shares of stock are subject to the Act because, even though plaintiffs did not acquire any shares of stock in addition to those which they already owned, they *collectively* have the power to direct the exercise of 51.8 percent of Medivest's voting power and therefore their decision to engage First Global as an agent constitutes a "control shares acquisition" as defined by section 61–6–3(1).[4] Defendants conclude that plaintiffs should be precluded from voting to remove and replace the Medivest directors until and unless their shares are granted such a right to vote in conformity with section 61–6–10. We disagree.

Defendants' emphasis of only certain words in the statute ignores a fundamental principle of statutory construction, that "terms of a statute are to be interpreted as a comprehensive whole and not in a piecemeal fashion." *Morton Int'l, Inc. v. Auditing Div. of Utah State Tax Comm'n,* 814 P.2d 581, 591 (Utah 1991); *see also CP Nat'l Corp. v. Public Serv. Comm'n,* 638 P.2d 519, 523 (Utah 1981) (holding that words are to be determined in light of their association with surrounding words and phrases). Moreover, section 61–6–3 must be read in the context of the entire Act. *See Berrett v. Purser & Edwards,* 876 P.2d 367, 369 (Utah 1994); *see also Osuala v. Aetna Life & Casualty,* 608

---

would allow "existing independent shareholders to evaluate offers from both *existing management* and a proposed acquiring entity." Floor Debate, vote on S.B. 3, 47th Legis., 1st Special Sess. (May 20, 1987) (House of Representatives Recording No. 6) (emphasis added).

**4.** Utah Code Ann. § 61–6–3(1) provides, with defendants' emphasis:

As used in this chapter, "control share acquisition" means the acquisition, directly or indirectly, by any person of ownership of, or *the power to direct the exercise of voting power* with respect to, issued and outstanding control shares.

P.2d 242, 243 (Utah 1980) (holding that "[i]f there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in the light of its objective, and to harmonize its provisions in accordance with the legislative intent and purpose" (footnote omitted)).

Section 61–6–3, when read in harmony with the entirety of the Act, addresses *the acquisition of* ownership of, or the power to direct the exercise of voting power with respect to, control shares of an issuing public corporation. *See* Utah Code Ann. § 61–6–2. There has been no such acquisition in the case at bar. Plaintiffs have not acquired any additional shares of Medivest stock, nor have they acquired any power to direct the exercise of voting power with respect to shares that they did not already have the power to control. Similarly, First Global has not acquired ownership of, or the power to direct the exercise of the voting power with respect to, issued and outstanding control shares. When plaintiffs signed the letter of engagement and filed the schedule 13D, they did not give First Global license to vote at its own discretion. First Global is simply an agent of the shareholders. *See Auto West, Inc. v. Baggs,* 678 P.2d 286, 289 (Utah 1984). As such, it is merely appointed to cast votes in accordance with each plaintiff's explicit instructions. Thus, the Act does not apply to plaintiffs' shares of stock.[5]

## CONCLUSION

Based on the foregoing, we hold that the trial court correctly concluded that (1) the new shares of stock issued on July 13, 1988, to McDannald, Stoddard, and Williams are control shares acquired in a control share acquisition subject to the Control Shares Acquisitions Act; and (2) plaintiffs' already existing shares of stock do not constitute a control share acquisition and therefore are not subject to the Act. Accordingly, we affirm.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur.

---

**5.** Additionally, adopting defendants' proposed reading of section 61–6–3(1) would render several other sections of the Utah Code inoperable whenever more than one-fifth of the shares of stock of any issuing public corporation are involved. Doing so would plainly violate our duty to interpret each statutory provision "so as to make it harmonious with other statutes relevant to the subject matter." *Stahl v. Utah Transit Auth.,* 618 P.2d 480, 481 (Utah 1980); *see also Grayson Roper Ltd. Partnership v. Finlinson,* 782 P.2d 467, 471–72 (Utah 1989) (stating that terms of related code provisions should be construed harmoniously). For instance, if First Global is plaintiffs' proxy, a logical reading of plaintiffs' letters of engagement, such a role is plainly contemplated by the Utah Revised Business Corporation Act, which specifically provides that "[a] shareholder may vote his shares in person or *by proxy.*" Utah Code Ann. § 16–10a–722(1) (emphasis added).